2021 IL App (2d) 190442
No. 2-19-0442
Opinion filed May 12, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16-CF-470 |
| MARKUS A. HUBBELL, | ) ) | Honorable Sharon L. Prather, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE ZENOFF delivered the judgment of the court, with opinion.
Presiding Justice Bridges and Justice Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Markus A. Hubbell, was tried by a jury under an indictment charging him with grooming (720 ILCS 5/11-25(a) (West 2016)) in that he knowingly used a device capable of electronic data storage or transmission to seduce, solicit, lure, or entice—or attempt to seduce, solicit, lure, or entice—a child to distribute photographs depicting her sex organs. He was convicted and now on appeal contends that the evidence was insufficient to prove him guilty beyond a reasonable doubt where he sent the child a photo of his bare buttocks and stated in part, "[N]ow it's your turn." He argues that such a photo and message do not constitute grooming, because they do not constitute a request that the child send, in return, a photograph of her "sex organs." However, considering the purpose of the grooming statute, coupled with defendant's

statements to the child, we determine that the jury could reasonably infer that defendant was grooming the child. Accordingly, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3      On June 16, 2016, defendant was indicted on the charge of grooming. The indictment alleged that defendant

"knowingly used a computer on-line service, Internet service, or any other device capable of electronic data storage or transmission to seduce, solicit, lure or entice, or attempt to seduce, solicit, lure or entice A.G., a female child under 18 years of age *** to distribute photographs depicting the sex organs of A.G., and/or to otherwise engage in any unlawful sexual conduct with A.G."

On January 7, 2019, the State moved to strike the portion stating "and/or to otherwise engage in any unlawful sexual conduct with A.G." The State said that it was unnecessary language, and defense counsel agreed. On January 8, 2019, a jury trial was held.

¶ 4      A.G. testified that, in March 2016, she was 16 years old and attending high school. She knew defendant as the father of her friend Kali and would see him at school events or birthday parties. A.G. used the Snapchat social media application on her cell phone. With Snapchat, a user can send text messages, photos, and short videos to other users. The content is on a timer that causes the content to disappear after a short period. Snapchat content does not save on the sender's or recipient's phone, and no one can retrieve the content after exiting. However, before the content disappears, senders and recipients can capture an image of the content by taking a screenshot.

¶ 5      On March 1, 2016, A.G. received a Snapchat message from user "speedy44sprint." She did not recognize that user. A.G. asked who the person was and received the reply that it was "Kali's dad." A.G. took the response to mean that defendant had sent the message. A.G. did not recall

anything unusual about the March 1, 2016, message—she and defendant had a Snapchat conversation that ended in a normal way.

¶ 6    On March 13, 2016, A.G. received another message from the same account. She described the message: "[I]t was a picture of his behind, his bare behind, and he said, now it's your turn, LOL, which means laugh out loud." A.G. understood the message to mean that it was her turn to send a nude photo back. However, she admitted that she did not know for sure what defendant intended. A.G. responded to the sender that the message was inappropriate, that she was not willing to send a photo back, and that she was going to report it to the police. Defendant responded, "Please keep this thread a secret. I have a steady job and a family." A.G. asked defendant why he liked her, and he said, "You are very cute to me. [I don't know] what it is. Id[*sic*] like to get with ya. But im [*sic*] sure that is not possible." He also added, "If you want me to I [*sic*] will keep a friendship type thing." A.G. took a screenshot and reported the matter to her school police. The screenshot was shown to the jury.

¶ 7    Sergeant Michele Asplund testified that she responded to the report about the Snapchat messages. She recovered the screenshot from A.G.'s phone and learned that the "speedy44sprint" account belonged to defendant. Asplund spoke with defendant, who confirmed that it was his account. He apologized for sending the photo and told Asplund "that he knew it was wrong, and that he felt like he was a pedophile or somebody who looked at child pornography." Defendant wrote an apology letter to A.G. stating that he was deeply sorry, that his life would never be the same, that he was ashamed and embarrassed, and that it would never happen again.

¶ 8    Asplund admitted that she did not ask defendant why he sent the messages. When asked whether she could discern what defendant intended by sending the photo with the message "your turn, LOL," Asplund stated that defendant's intent was "absolutely implied" and that when a

person "sends a picture of genitalia, and then says, your turn, LOL, a common person would assume that he would want a genitalia picture in return." She disagreed that a person sending a photo of buttocks would necessarily want only an image of buttocks in return. Instead, she stated, "I would have to say genitalia or something inappropriate. I wouldn't say buttocks for buttocks necessarily, but it was very clear that he wanted an inappropriate picture." She agreed that "LOL" meant "laugh out loud." She stated that she did not know whether defendant meant "LOL" in a joking context, and she could only assume, based on common sense, what defendant meant by "your turn."

¶ 9     At the end of the State's case, defendant moved for a directed finding. Citing *People v. Nibbio*, 180 Ill. App. 3d 513 (1989), defendant argued that the evidence was insufficient to prove that he requested a picture of A.G.'s "sex organs" because that term was exclusive to a vagina or penis and did not include bare buttocks. The State responded that a broader definition of "sex organs" should be adopted and that defendant's statement to A.G., "I want to get with you," had a sexual connotation. The State also argued that, when considered in context—"grooming" being an attempt to seduce, solicit, lure, or entice—defendant's sending a photo of his buttocks could be deemed an attempt to obtain photos of A.G.'s sex organs in return. The court denied defendant's motion, stating that it was "a question of fact for the trier of fact, the jury, to determine the meaning of the [d]efendant's message to [A.G.]."

¶ 10     At the jury instruction conference, defendant tendered an instruction defining the term " 'sex organ' " as "the vagina or penis." The trial court noted that the grooming statute did not define "sex organ" and that there was no case law specifically defining it. The court recognized that the common definition of "sex organ" would be limited to the vagina or penis, but the court

found that the intent and purpose of the grooming statute contemplated a broader definition. Thus, the court refused the instruction.

¶ 11    During closing, the State argued that, when defendant sent the photo, he wanted A.G. to send back "the same thing or more." Defendant argued that the photo was insufficient to show a solicitation for a photo of a sex organ. The jury found defendant guilty. The court denied defendant's motion for judgment notwithstanding the verdict and sentenced him to 24 months of probation and 90 days in jail. He appeals.

¶ 12                                II. ANALYSIS

¶ 13    Defendant contends that the State failed to prove him guilty beyond a reasonable doubt, because it failed to show that he sought to solicit A.G. to send him a photo of her sex organs. He argues that, under the plain language of the grooming statute, buttocks are not sex organs and that the evidence showed that he solicited only a photo of buttocks.

¶ 14    When reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State and consider whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *People v. Amigon*, 239 Ill. 2d 71, 77 (2010). The critical inquiry is whether the evidence could reasonably support a guilty finding, regardless of whether the evidence is direct or circumstantial. *People v. Lissade*, 403 Ill. App. 3d 609, 612 (2010). The fact finder is responsible for determining the witnesses' credibility, weighing their testimony, and deciding on the reasonable inferences to be drawn from the evidence. See *People v. Hill*, 272 Ill. App. 3d 597, 603-04 (1995). "Because the trier of fact is best positioned to judge the credibility of the witnesses and resolve disputes in the evidence, its decision is entitled to great deference." *Lissade*, 403 Ill. App. 3d at 612. We will reverse the defendant's

conviction only where the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt. *Id.*

¶ 15    The grooming statute provides in part:

> "A person commits grooming when he or she knowingly uses a computer on-line service, Internet service, local bulletin board service, or any other device capable of electronic data storage or transmission to seduce, solicit, lure, or entice, or attempt to seduce, solicit, lure, or entice, a child, *** to distribute photographs depicting the sex organs of the child, or to otherwise engage in any unlawful sexual conduct with a child ***." 720 ILCS 5/11-25(a) (West 2016).

The State amended the indictment to remove the allegation concerning "any unlawful sexual conduct with a child." Thus, defendant argues that the State was required to prove that he solicited A.G. to provide him with a picture of her sex organs.

¶ 16    "The primary objective of statutory construction is to ascertain and give effect to the legislature's intent." *People v. Vara*, 2016 IL App (2d) 140849, ¶ 34. "All other rules of statutory construction are subordinate to this cardinal principle." *Id.* "The most reliable indicator of legislative intent is the language of the statute itself, given its plain and ordinary meaning." *Id.* "Courts review the statute as a whole, construing words and phrases in light of other relevant statutory provisions and not in isolation." *Id.* "If possible, each word, clause, and sentence must be given a reasonable meaning and should not be rendered superfluous." *Id.* "Courts may also consider the 'underlying purpose of the statute's enactment, the evils sought to be remedied, and the consequences of construing the statute in one manner versus another.' " *Id.* (quoting *People v. Garcia*, 241 Ill. 2d 416, 42l (2011)). "Further, we presume that the legislature did not intend to create absurd, inconvenient, or unjust results." *Id.* While we generally construe ambiguous

criminal statutes in favor of the defendant, we will not construe a statute in a way that defeats the legislative intent. *Id.*

¶ 17 As defendant points out, the Fifth District has held that buttocks are not a part of the sex organs. *Nibbio*, 180 Ill. App. 3d at 517. However, even assuming that buttocks are not part of the sex organs, this case is not as simple as defendant would have it seem. We disagree that a defendant's act of sending a photo of his bare buttocks compels a finding that the defendant sought to solicit only the same in return. The grooming statute contemplates a broad set of circumstances under which a defendant could be determined to have engaged in the act of "grooming" a child. In reaching this determination, we are guided by the definition of "grooming" itself. See *Vara*, 2016 IL App (2d) 140849, ¶ 36.

¶ 18 The offense of grooming was created in response to the use of the Internet to meet and seduce children. *Id.* ¶ 32 (citing 95th Ill. Gen. Assem., House Proceedings, May 22, 2008, at 54-55 (statements of Representative Mathias)). The grooming statute prohibits a defendant from using an electronic transmission device to seduce, solicit, lure, or entice—or to attempt to seduce, solicit, lure, or entice—a child to distribute photographs depicting the sex organs of the child. 720 ILCS 5/11-25(a) (West 2016). "Grooming" is "commonly understood as a method of building trust with a child or an adult around the child in an effort to gain access to the child, make the child a cooperative participant in the abuse, and reduce the chance that the abuse is detected or disclosed." *Vara*, 2016 IL App (2d) ¶ 37 "[A]s a transitive verb, groom means 'to get into readiness for a specific objective.' " *Id.* (quoting *Merrian-Webster Online Dictionary*, http://www.merriam-webster.com/dictionary/groom (last visited April 22, 2021) [https://perma.cc/FFM2-6VTW]). "Importantly, we construe the statute with an eye toward the evil the legislature sought to remedy." *Id.* "[T]he plain language of the grooming statute makes clear that the legislature sought to prevent

sexual abuse of children." *Id.* We have recognized that "[m]any other states share this understanding of grooming as a method used by sexual abusers to facilitate sexual abuse of children." *Id.* For example, "in the context of a sexual abuse case, 'grooming' mean[s] 'conduct intended to foster trust and remove defenses over time through a pattern of seduction and preparation, resulting in the child being willing and compliant to the defendant's sexual abuse.' " *Id.* (quoting *State v. Coleman*, 276 P.3d 744, 749 (Idaho Ct. App. 2012)).

¶ 19    Considering the definition of grooming, we cannot agree that the legislature intended that a defendant's use of a photo of his bare buttocks with the words "now it's your turn, LOL," must be read to mean that the defendant was soliciting or attempting to solicit only a photo of buttocks in return or was not otherwise "grooming" the child. Instead, a rational trier of fact could determine under the circumstances of a case that a defendant's act of sending an inappropriate photo of something other than a sex organ was, if not a direct solicitation for a photograph of the child's sex organs, at least a first step in a process that the defendant hoped would lead the child to send a photograph of his or her sex organs.

¶ 20    Here, defendant coupled the photo with a message that he would like to "get with" A.G., which had a sexual connotation. He then asked her to keep his message secret and referenced keeping "a friendship type thing," if A.G. so desired, indicating that his initial intent was something more. He also told Asplund "that he knew it was wrong, and that he felt like he was a pedophile or somebody who looked at child pornography." That statement was evidence of his intent. Thus, it was reasonable to infer from defendant's statements that he was "grooming" A.G. by attempting to solicit, lure, entice, or seduce her into sending him photos not just of her buttocks but other nude photos as well, including photos of her sex organs. As a result, the State proved defendant guilty beyond a reasonable doubt. Because we determine that the evidence was sufficient to prove

defendant guilty beyond a reasonable doubt, we need not, and do not, address the State's alternative argument that we modify the conviction because defendant was also guilty of a lesser-included offense.

¶ 21                                III. CONCLUSION

¶ 22    We affirm the judgment of the circuit court of McHenry County.

¶ 23    Affirmed.

**No. 2-19-0442**

| | |
|---|---|
| **Cite as:** | *People v. Hubbell*, 2021 IL App (2d) 190442 |
| **Decision Under Review:** | Appeal from the Circuit Court of McHenry County, No. 16-CF-470; the Hon. Sharon L. Prather, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Lilien, and Anthony J. Santella, of State Appellate Defender's Office, of Elgin, for appellant. |
| **Attorneys for Appellee:** | Patrick D. Kenneally, State's Attorney, of Woodstock (Patrick Delfino and Edward R. Psenicka, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |