THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WAYNE K. LEMONS, Defendant-Appellant.

Fourth District   No. 4—90—0252

Opinion filed March 14, 1991.—Rehearing denied April 15, 1991.

34

Daniel D. Yuhas and David P. Bergschneider, both of State Appellate Defender's Office, of Springfield, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Kenneth R. Boyle, Robert J. Biderman, and Kevin T. McClain, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

On September 8, 1988, an information filed in the circuit court of McLean County charged defendant Wayne K. Lemons in separate counts with the commission of the offense of aggravated criminal sexual abuse by committing acts of sexual conduct with C.S. and S.S. As charged here, a person commits aggravated criminal sexual abuse when that person, being 17 years of age or older, commits an act of "sexual conduct" with a person under 13 years of age (Ill. Rev. Stat. 1987, ch. 38, par. 12—16(c)(1)). As charged here, "sexual conduct" consists of the "intentional or knowing touching or fondling" by an accused "directly or through clothing, of the sex organs *** or breast of the victim[s]." (Ill. Rev. Stat. 1987, ch. 38, par. 12—12(e).) The information charged defendant, a person over 17 years of age, with fondling (1) the sex organs and breast of C.S., and (2) the sex organs of S.S., each of whom was under 13 years of age.

After a trial by jury, defendant was convicted of both offenses on January 11, 1990. On March 12, 1990, the court sentenced defendant to concurrent terms of 4½ years' imprisonment. Defendant appeals, contending (1) the evidence did not support the verdict, and (2) the failure of the court to instruct the jury as to the mental state necessary for commission of aggravated criminal sexual abuse resulted in plain error. We affirm.

The major dispute in regard to the sufficiency of the evidence to support the verdicts concerns the proper standard for us to view the evidence on review. Defendant points out that in several of our decisions, beginning with *People v. James* (1990), 200 Ill. App. 3d 380, 558 N.E.2d 732, *appeal denied* (1990), 135 Ill. 2d 562, 564 N.E.2d 843, we have no longer followed the rule that in cases of sexual offenses, a conviction based entirely upon the uncorroborated testimony of the victim cannot stand unless that testimony is "clear and convincing" as stated in *People v. Freeman* (1910), 244 Ill. 590, 595, 91 N.E. 708, 710. Defendant maintains we have, in effect, improperly attempted to overrule the supreme court. Defendant urges us to abandon *James* and its progeny and to return to the *Freeman* rule. We adhere to *James*. However, before discussing that issue further, we summarize the evidence upon which the verdicts were based.

At the time of the alleged offenses, C.S. and S.S. were 11 and 10 years of age, respectively. They lived with their mother, J.S. The defendant, who was not married to J.S., was living with them and other children of J.S. Defendant was the father of the two youngest children. The proof of defendant's guilt depends entirely upon the testimony of C.S. and S.S.

C.S. testified as follows. One afternoon in December 1987, she and defendant were at home alone watching television. Defendant had come out of his bedroom and sat down "real close" to her on a couch. He then reached underneath her clothing and rubbed her breast for approximately five minutes. He, then, rubbed her in the pubic area from outside her jeans. This lasted for about three minutes. She then got up and went to her godmother's house but did not tell her godmother of the incident. The first person C.S. told about the incident was her mother, whom she told "[a] long time" later. Her mother was "shocked." She and S.S. never talked about this episode or similar matters. After this episode, she avoided defendant, although they had a "good" relationship earlier. In the summer of 1988, C.S. discussed the matter with a neighbor, who apparently called the situation to the attention of the Department of Children and Family Services (DCFS). A person from DCFS then interviewed C.S.

C.S. was impeached to the extent that when testifying before the grand jury she gave an answer of "yeah" to a question as to whether, at the time of the alleged rubbing of her vaginal area, defendant had touched her "inside [her] clothing on [her] skin." At trial, C.S. testified she did not remember giving that answer and did not know why she did. C.S. also testified at trial that defendant had only touched her breasts on one side while she had signed a statement taken by a

police officer indicating defendant had "felt [her] breasts all over." She was also impeached on cross-examination by her inability to remember such details of the alleged offense as the time of day when the incident occurred, the name of the television program she had been watching, what clothes defendant was wearing, and which hand he used to rub under her shirt.

S.S. testified that during the summer of 1987, when she and defendant were at home alone, he called her into her mother's bedroom and told her to pull down her pants, offering her money to do so. According to S.S. she complied and defendant touched her skin on the outside of her vagina. S.S. testified that as this was happening, defendant's mother arrived at the house and knocked on the front door, whereupon defendant left to let her in. According to S.S., defendant was wearing blue jeans and had unbuckled his belt before he felt between her legs. She told no one of this until she was questioned by a caseworker investigating the complaint that defendant had sexually abused C.S. S.S. testified at trial that this episode occurred after the Fourth of July, whereas she had testified before the grand jury that it happened before that date. Similar disparity existed between the earlier testimony of S.S. and that she gave at trial as to the room she was in when required by defendant to come to the bedroom.

Defendant testified he had lived with J.S. periodically for 10 years and denied he had ever touched S.S. or C.S. on the breast or vagina. J.S. testified neither daughter told her defendant had touched them inappropriately and said she first learned of their contentions from DCFS personnel. J.S. further stated she had noticed no changes in either girl's attitude toward defendant occurring after the time of the alleged incidents but stated C.S. had disliked defendant for a long time because he established disciplinary rules.

■ Defendant's insistence upon the application of the "clear and convincing" test of *Freeman* on review arises because of the alleged lack of evidence to corroborate the testimony of C.S. and S.S. and the weaknesses in their testimony. The *Freeman* court described an offense involving sexual abuse to minors as being analogous to the offense of rape where traditionally reviewing courts had given special scrutiny to the testimony of victims and mentioned that a jury is particularly likely to be aroused against those charged with committing a sexual offense against children. That court then applied a test, then applicable to rape cases, whereby the testimony of the victim, if uncorroborated, was required to be "clear and convincing" to support a conviction. *Freeman*, 244 Ill. at 595, 91 N.E. at 710.

The *Freeman* "clear and convincing" standard of review has been followed by the supreme court through the years (*e.g., People v. Fitzgibbons* (1931), 343 Ill. 69, 174 N.E. 848; *People v. Kolden* (1962), 25 Ill. 2d 327, 185 N.E.2d 170) and more recently in *People v. Morgan* (1977), 69 Ill. 2d 200, 370 N.E.2d 1063. As the *Freeman* court indicated, the rule for review that court was invoking had been the rule in rape cases. An excellent discussion of the history of the "clear and convincing" rule in rape cases is contained in the special concurrence of Justice Steigmann of this court in *People v. Cole* (1990), 193 Ill. App. 3d 990, 997-1001, 550 N.E.2d 723, 728-31 (Steigmann, J., specially concurring), a case involving a conviction for aggravated criminal sexual abuse. Apparently, the last time the supreme court applied the "clear and convincing" rule to the uncorroborated testimony of a victim in the case of a sexual offense against an adult was *People v. Stagg* (1963), 29 Ill. 2d 415, 194 N.E.2d 342.

■■ ■ After the decision of this court in *Cole*, this court in *James* expressly rejected the requirement that the uncorroborated testimony of a victim of a sex offense be "clear and convincing" in order to support the verdict. The opinion by Justice Knecht thoroughly explained our rationale in these words:

"We will no longer require that in a case in which a sex offense is charged, the State must demonstrate either the victim's testimony is clear and convincing or substantially corroborated to prove guilt beyond a reasonable doubt. (See *People v. Roy* (1990), 201 Ill. App. 3d 166, 184-85, 558 N.E.2d 1208, 1221; *People v. Cole* (1990), 193 Ill. App. 3d 990, 997-1001, 550 N.E.2d 723, 728-31 (Steigmann, J., specially concurring).) Such a standard is contrary to recent Illinois Supreme Court decisions which disapprove of particularized definitions of reasonable doubt. (*People v. Pintos* (1989), 133 Ill. 2d 286, 549 N.E.2d 344; *People v. Crow* (1985), 108 Ill. 2d 520, 485 N.E.2d 381.) Moreover, there is no legitimate reason to place additional requirements on the victims of sex crimes regarding how persuasive their testimony must be merely because of the nature of the crime. The testimony of no other category of crime victim is held to be automatically suspect or to require additional proof beyond the statutory requirements. The standard cited in *Secret* and *Server* is based upon sexist concepts which have no meaning.

Instead, we review the issue of whether defendant was proved guilty beyond a reasonable doubt pursuant to the same standard applied in any other criminal case. The standard is

whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.)" *James*, 200 Ill. App. 3d at 394-95, 558 N.E.2d at 742.

See also *People v. Coleman* (1990), 205 Ill. App. 3d 567, 563 N.E.2d 1010.

In urging us to retreat from our refusal to apply the "clear and convincing" requirement for sex offense convictions based on the testimony of uncorroborated victims, defendant points out that the supreme court has never expressly abandoned that rule which it has followed until fairly recently. We recognize that. This court proceeded only after careful deliberation.

As explained in the writings of Justices Knecht and Steigmann, to which we have alluded, the supreme court has moved to a position rejecting particularized standards for determining the sufficiency of proof to convict. Notably, in *People v. Secret* (1978), 72 Ill. 2d 371, 381 N.E.2d 285, that court was faced with the "clear and convincing" requirement in the absence of corroboration. After reciting past adherences thereto, that court stated: "We need not determine, however, the extent to which the standard of review in convictions of rape may be different from that in convictions of other crimes, for we are satisfied that the complainant's testimony was corroborated here." (*Secret*, 72 Ill. 2d at 376-77, 381 N.E.2d at 288.) This seems to indicate that even then, that court was questioning the continued viability of the "clear and convincing" rule.

Moreover, recently, in rejecting the reasonable hypotheses of innocence rule of review in cases where the proof of an accused's commission of a crime is entirely circumstantial, the supreme court stated:

"Instead, we find that the reasonable doubt test as set forth in *People v. Collins* (1985), 106 Ill. 2d 237, 261, should be applied in *reviewing the sufficiency of evidence in all criminal cases*, whether the evidence is direct or circumstantial." (Emphasis added.) (*People v. Pintos* (1989), 133 Ill. 2d 286, 291, 549 N.E.2d 344, 346.)

We also note that the "clear and convincing" rule has been rejected by the First District Appellate Court in *People v. Byrd* (1990), 206 Ill. App. 3d 996, 1006-07, 565 N.E.2d 176, 182, *appeal denied* (1991), 137

Ill. 2d 667, and *People v. Westfield* (1990), 207 Ill. App. 3d 772, 777, 566 N.E.2d 392, 395-96.

Part of the reason for this court's rejection of the "clear and convincing" rule was that it is sexist. (*James*, 200 Ill. App. 3d 380, 558 N.E.2d 732.) This is particularly true in cases involving the offense traditionally described as rape. The victim there is almost always a female. The sexist aspect of the rule is less applicable to the cases where juveniles are sexually mistreated. In those cases, some of the victims are male. Defendant points this out in arguing that we could modify our stance by following the "clear and convincing" rule in the latter type of cases. Defendant contends children's accusations are "particularly likely" to be false, unreliable, or the product of coaching by a malevolent adult. As support for this view, defendant cites *Coy v. Iowa* (1988), 487 U.S. 1012, 1020, 101 L. Ed. 2d 857, 866, 108 S. Ct. 2798, 2802, which questioned the constitutionality of a screen placed between defendant and the testifying child victims of sexual abuse so that he could see them but they could not see him. The issue in *Coy* was preservation of defendant's confrontational rights which might reveal a false accuser or "the child coached by a malevolent adult." *Coy*, 487 U.S. at 1020, 101 L. Ed. 2d at 866, 108 S. Ct. at 2802.

■ The right to confront witnesses, including those who are juveniles, is available to all defendants. To the extent that juveniles are unreliable witnesses, that potential is present in all criminal cases, for all manner of offenses, but no special rule in regard to considering their testimony on review has been called to our attention. Sufficient justification does not exist to apply a "clear and convincing" rule to review of convictions based on the uncorroborated testimony of a juvenile victim. Such a rule would not conform to the reasonable doubt test of *Collins*.

Defendant complains that this court rejected the "clear and convincing" test in cases where the issue was raised *sua sponte* without the defendants having an opportunity to brief and argue the question. Regardless of the extent to which that happened, the question could have been raised upon petition for rehearing, and this defendant has fully argued the question. We continue to believe that the statements by the supreme court of a single standard for review of the evidence supporting a criminal conviction justify the decisions this court has made in regard to the "clear and convincing" rule. We will continue to follow those decisions here. Defendant has requested that upon our determination of the appeal, we should certify our decision for review by the supreme court. (Ill. Const. 1970, art. VI, §4(c).) While the ques-

tion involved is important, we do not deem it to be of such importance as to require such certification. The supreme court faces an expanded number of appeals which arise as a matter of right. We need not infringe upon its exercise of discretion as to how it spends the rest of its limited time.

■ Our rejection of the "clear and convincing" standard of review does not mean we should not consider the evidence in this case very carefully, just as we should in all cases where the sufficiency of the evidence to convict is raised on appeal. We consider the question of whether the testimony of C.S. and S.S. each supported the other by showing a *modus operandi* by defendant in committing sex offenses of this nature. In *People v. Taylor* (1987), 153 Ill. App. 3d 710, 718, 506 N.E.2d 321, 327, quoting *People v. Middleton* (1976), 38 Ill. App. 3d 984, 990, 350 N.E.2d 223, 228, we noted that " 'evidence of a defendant's *modus operandi* may be relevant not only to the issue of who committed a crime but also to the issue of whether a crime was committed at all.' " There, we found proof of a *modus operandi* could be made by evidence that a teacher had an unusual method of luring young female pupils into situations where he was alone with them. Here, the evidence of defendant's gaining access to molest C.S. and S.S. was not sufficiently unusual or special to constitute a *modus operandi* and does not corroborate the testimony of the two girls.

■ We also consider that the testimony of C.S. and S.S. was somewhat impeached by their prior statements and inability to recall details of the alleged offenses. However, the jury could conclude that their inconsistent statements resulted from lack of care in their earlier statements. The length of time they took before relating the offenses to anyone is also a matter to be considered, but the jury might also deem this factor supportive of their testimony. The episodes they described would be embarrassing to them, thus causing them to be secretive about what happened. Moreover, a child contriving a claim of sexual abuse in order to get revenge against a live-in boyfriend of her mother would be unlikely to make the charge tardily and first to a neighbor hoping the neighbor would alert authorities.

The jury had the opportunity to view the witnesses both for the prosecution and the defense and to judge whether they were likely to be telling the truth. We cannot find that a rational jury could not find beyond a reasonable doubt that C.S. and S.S. were both telling the truth. (*Jackson*, 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781; *Collins*, 106 Ill. 2d 237, 478 N.E.2d 267; *James*, 200 Ill. App. 3d 380, 558 N.E.2d 732.) The verdicts of guilty were supported by the evidence.

■ Defendant's contention that the court committed plain error in failing to instruct the jury as to the mental state the prosecution must prove defendant possessed in order to commit the crimes charged is without merit.

The jury was given an instruction which stated:

"The term 'sexual conduct' means any *intentional* or *knowing* touching or fondling by the accused either directly or through the clothing, of the sex organ or breast of the victim, for the purpose of sexual gratification or arousal of the victim or the accused." (Emphasis added.)

(See Illinois Pattern Jury Instructions, Criminal, No. 11.64 (2d ed. Supp. 1987) (hereinafter IPI Criminal 2d).) This instruction was in the language of section 12—12(e) of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 12—12(e)).

The jury was then instructed as to the offenses of which both C.S. and S.S. were the victims that the State was required to prove beyond a reasonable doubt that "defendant committed an act of *sexual conduct*" with them. (Emphasis added.) (See IPI Criminal 2d No. 11.40 (Supp. 1987).) Those instructions also required the State to prove beyond a reasonable doubt that at the time of the acts, defendant was over 17 years of age and the victims under 13 years of age. Instructions are to be considered as a whole. (*People v. Hood* (1990), 203 Ill. App. 3d 289, 298, 560 N.E.2d 1187, 1194.) These instructions fully informed the jury that to find defendant guilty, he must be shown beyond a reasonable doubt to have committed an act of sexual conduct which required that he acted intentionally or, at least, knowingly.

For the reasons stated, we affirm.

Affirmed.

SPITZ and KNECHT, JJ., concur.